**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| ANTHONY C. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:11-CV-350 |
| | ) | |
| FORT WAYNE POLICE | ) | |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants, | ) | |

## **OPINION AND ORDER**

This matter is before the Court on: (1) Defendants' Motion for Summary Judgment and Designation of Evidence, filed by Defendants on May 15, 2013 (DE #101); (2) Plaintiff's Motion to Strike Defendants Summary Judgment and Affidavits Rule 12(f) of the F.R.C.P., filed by Plaintiff on June 13, 2013 (DE #106); and (3) Defendants' Motion to Strike Portions of Anthony C. Martin's Affidavit, filed by Defendants on June 27, 2013 (DE #108). For the reasons set forth below, the Motion for Summary Judgment (DE #101) is **GRANTED**, Plaintiff's Motion to Strike Defendants' Summary Judgment and Affidavits (DE #106) is **DENIED**, and Defendants' Motion to Strike Portions of Martin's Affidavit (DE #108) is also **DENIED**. The Clerk is **DIRECTED** to close this case.

BACKGROUND

On February 22, 2011, *pro se* Plaintiff, Anthony C. Martin ("Martin"), filed a complaint in the Allen Superior Court. (DE #1.) The original complaint alleged that the Fort Wayne Police Department, Officer Drummer #10029 ("Officer Drummer"), Three Unknown Officers, and Desk Clerk Candice (collectively, "Defendants"), violated his Fourth and Fourteenth Amendment rights and additionally alleged state law claims for harassment, retaliation, defamation and emotional distress. (*Id.*) On October 6, 2011, a Notice of Removal was filed by Defendants. (DE #2). In that notice, Defendants set forth their contentions for removal based on federal question jurisdiction pursuant to 28 U.S.C. sections 1441 and 1446. On October 7, 2011, Martin was ordered to file an amended complaint because his original complaint was unsigned. (DE #4.) Martin filed the signed amended complaint on October 19, 2011, which included the same general claims described above, and he also filed a motion to remand on that same day. (DE #11 & DE #12.) Martin's motion to remand was denied. (DE #16.) Martin subsequently requested leave to amend his complaint to add additional parties as well as to amend his claims and demand for relief. (DE #21 & DE #23.) Magistrate Judge Roger B. Cosbey granted Martin's unopposed requests to amend his complaint on December 5, 2011. (DE #27.) The City of Fort Wayne, Mayor Tom Henry ("Mayor Henry"), and Chief of Police Rusty York ("Chief

York") were added to the collective list of Defendants, and Martin's claims were revised to include First Amendment, Fourth Amendment, Fourteenth Amendment, harassment, retaliation, defamation, and emotional distress claims as described in Martin's supplement. (DE #27; see also DE #21 & DE #23.) Martin alleges the following facts in the controlling pleading:[1]

> On November 3, 2010 at approx. 9:15 pm
> plaintiff/petitioner was parked on Masterson
> street (214 E. Masterson plaintiff's family
> residence) which a fully marked police car
> #10029 (Officer Drummer) drive past as
> plaintiff was walking out to his vehicle.
> Plaintiff got inside his vehicle that he was
> driving that day and turned left onto Clinton,
> while driving southbound plaintiff notice the
> police car making a complete u-turn nearly
> causing an accident maneuvering and
> accelerated at high speeds to make his way
> behind plaintiff activating his emergency
> lights, signaling plaintiff to pull over.
> Plaintiff was rudely snatched out of his car,
> handcuffed roughly and placed into the back of
> an unknown police vehicle. Plaintiff was
> detained for more than twenty minutes
> unwillingly beyond plaintiffs will while his
> vehicle was being searched by the initial
> officer, a K-9 police dog and several unknown
> police officers mentioned in this complaint.
> Plaintiff was released and ordered to leave
> the scene or be attested which plaintiff told
> the officer he was driving to Creighton Ave.
> to report the officer which plaintiff got into
> his car and headed towards the police station.
> Plaintiff witnessed in his rear view mirror
> that a police car was accelerating at high
> speeds with his emergency lights on, signaling
> plaintiff to stop. Plaintiff fearing for his
> life drove to the nearest gast station (Shell

---

[1] The Court has inserted Martin's allegations verbatim and has not attempted to correct each grammatical or spelling error.

gas station / Pontiac and Clinton St.) Which
plaintiff was searched again this time
resulting in the officers searching inside the
trunk and under the hood of the vehicle as if
the officers were searching for secret
compartments or stash spots after roughly
twenty to twenty five minutes plaintiff was
let go and ordered to leave the scene.
Officer #10029 stated to the plaintiff that he
"will get his" by the officer of his crew
(meaning that the officers have an internal
click or secret group within the FWPD)
Plaintiff drove to police station to report
the incidents which plaintiff talked to a desk
clerk named Candace who was very
unprofessional and uncooperative in helping
plaintiff file a complaint. Plaintiff was
called a liar by the desk clerk which an
unknown officer came from the back room
shoving plaintiff out of the police station.
Plaintiff was denied to make a complaint which
the unknown officer balled up a FWPD complaint
form striking plaintiff and told plaintiff to
"do it by mail" throwing the envelope of the
FWPD complaint also to the plaitiff, ordering
plaintiff to leave or he would be arrested.

(DE #23, p. 3.)

On September 14, 2012, Martin filed a motion to amend his
amended complaint, seeking to add equal protection and due process
claims. (DE #69.) This motion was denied by Magistrate Cosbey
because it was untimely and because Martin failed to establish good
cause for the untimely amendment. (DE #70.) On December 12, 2012,
Martin filed another motion to amend his amended complaint, this
time seeking to "supplement the unknown officers or John Does" by
naming Sergeant James Ritchie, Officer Derrick Demorest, and the
"911 Dispatcher on February 16, 2011" as additional defendants.
(DE #87.) This motion was also denied by Magistrate Cosbey because

it was filed more than seven months after the deadline to amend and because Martine failed to establish good cause for the untimely request. (DE #94.) Significant additional motion practice ensued during various discovery disputes.

On May 15, 2013, Defendants filed the instant motion for summary judgment. (DE #101.) As required by Local Rule 56-1(f), Defendants served Martin with a Notice of Summary Judgment Motion. (DE #103.) On June 12, 2013, Martin filed a response to Defendants' summary judgment motion. (DE #104.) Defendants filed a reply on June 27, 2013. (DE #107.) In addition, Martin filed a motion to strike Defendants' summary judgment motion on June 13, 2013, and Defendants filed a motion to strike portions of Martin's affidavit on June 27, 2013. (DE #106 & DE #108.) Defendants filed a response to Martin's motion to strike on June 27, 2013, but Martin did not respond to Defendants' motion. (DE #110.) Therefore, all of the instant motions are ripe for adjudication.

PRELIMINARY EVIDENTIARY ISSUES

*Martin's Motion to Strike*

Martin has filed a motion to strike the summary judgment motion and related affidavit filed by Defendants. (DE #106.) According to the caption, Martin brings his motion pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense

or any redundant, immaterial, impertinent, or scandalous matter."
Fed. R. Civ. P. 12(f). However, a summary judgment motion is not
a pleading, and bringing a motion to strike it under Rule 12(f) is
procedurally improper. See Fed. R. Civ. P. 7(a) (defining
pleadings finitely with a list that does not include motions).
Furthermore, a motion to strike under Rule 12(f) is untimely at
this stage in the proceedings. See Fed. R. Civ. P. 12(f)(2) (party
may move to strike "within 21 days after being served with the
pleading" if no response is allowed). Although entitled to some
procedural protections, including liberal construal of documents,
even *pro se* litigants must comply with procedural rules. *Members
v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998). Thus, Martin's motion
fails on procedural grounds.

Martin's motion to strike also fails on substantive grounds.
As to the summary judgment motion itself, Martin refers to it as
"'vague', untimely, and considerate (sic) an 'ambush' to
plaintiff." (DE #106, p. 1.) Martin does not expand upon the
alleged vagueness of the document. However, he does assert that
the "suppository and non-suppository motions" deadline was February
22, 2013, and he laments that Defendants waited until the day of
the deadline to file their motion. (*Id*.) The Court can only
assume that Martin is referring to the dispositive motion deadline,
which was set by this Court on April 9, 2013, via oral order and
indicates that "any and all Dispositive and/or Daubert Motions are

6

to be filed on or before 5/15/2013." (DE #98.) Defendants filed their motion for summary judgment on May 15, 2013, and, therefore, it is considered timely.[2] Martin's argument is without merit.

As to the request to strike Officer Drummer's affidavit, Martin contends that it should be stricken from the record because it contains "newly discovered evidence." (DE #106, p. 2.) He claims that Defendants never mentioned Officer Souther or Detective Strayer by name in any of Martin's discovery requests. (*Id.*) In response, Defendants point to the record and state that "Martin was provided with information referencing Officer Souther and Detective Strayer well in advance" of the filing of the summary judgment motion. (DE #110, p. 4.) They further point out that Officer Souther is not mentioned in Officer Drummer's affidavit at all. (*Id.*) The Court has examined the docket and agrees with Defendants. (See DE #44; DE #65; DE #68.) Officer Drummer's affidavit does not contain "newly discovered evidence" related to either Officer Souther or Detective Strayer, and Martin's argument is unfounded. Next Martin urges the Court to view the affidavit as "vague, coerced, and unrealistic." (DE #106, p. 2.) In support of this argument Martin simply points to Officer Drummer's prior disciplinary record. However, the Court notes that Officer

---

[2] Martin points out that Magistrate Cosbey granted Defendants' motion to strike Martin's discovery requests because those requests were not initiated thirty days before the discovery deadline as directed; however, discovery deadlines and dispositive motion deadlines are not the same, and there is no question that any dispositive motions filed on or before May 15, 2013, are considered timely by this Court. (See DE #64; DE #96; DE #98.)

Drummer's disciplinary record with the Fort Wayne Police Department is irrelevant, as none of the information provided pertains to the date of the alleged occurrence at issue in this case. Finally, Martin suggests that the Court use "common sense" to strike the affidavit because no other officer wrote a report or supplement detailing the incident. (*Id.*) However, Martin has not provided any evidence that such a practice is standard or required by the Fort Wayne Police Department, and the Court will not strike the affidavit on that basis. For these as well as procedural reasons, Martin's motion to strike is **DENIED** in its entirety.

*Defendants' Motion to Strike*

Defendants have filed a motion to strike all but two paragraphs of Martin's affidavit. (DE #108.) It is noteworthy that Martin is a *pro se* plaintiff; however, his *pro se* status does not relieve him from complying with the procedural rules associated with summary judgment. See *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (requiring *pro se* plaintiff to strictly comply with Northern District of Illinois Local Rule 56.1); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (explaining that *pro se* litigants must still comply with procedural rules). Martin is an experienced *pro se* litigator,[3] and, more

---

[3] A quick docket search reveals that Martin has filed approximately twenty nine civil cases in the Northern District of Indiana since 2005, including seven cases filed on the exact same date as this case.

importantly, pursuant to Rule 56 and Local Rule 56-1, Martin was specifically given notice of the filing of summary judgment, which cited, *inter alia*, the requirement that:

> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(4) (quoted in the Notice of Summary-Judgment Motion, DE #103.) "An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion." *Paniaguas v. Aldon Cos.*, No. 2:04-CV-468-PRC, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006) (citing *Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145, 1148-49 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)). Therefore, the following statements need not be considered by the Court in deciding the motion: (1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture. *Heltzel v. Dutchmen Mfg., Inc.*, No. 3:06-CV-0227-WCL, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20, 2007) (citations omitted).

In this case, Defendants argue that the Court should strike paragraphs two, three, four, five, six, seven, nine, ten, and eleven of Martin's affidavit, contending it sets forth inadmissible

hearsay, vague and speculative statements, and legal conclusions. (DE #108 & DE #109.) The remedy requested by Defendants, which asks the Court to strike almost every paragraph in full, is overly broad. Some of the material in the affidavit is proper.

The Court notes that in ruling on a motion for summary judgment, the Court considers only evidence that is consistent with the standards set forth above. The Court has duly noted Defendants' objections (as well as Martin's lack of response to such objections) and is able to sift through the evidence and to consider each piece under the applicable federal rules. Thus, there is no need to strike all of Martin's affidavit. Accordingly, the Court **DENIES** Defendants' motion to strike Martin's affidavit as overly broad and unnecessary.


DISCUSSION

*Summary Judgment Standard*

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

A party opposing a properly supported summary judgment motion may not rely on allegations or denials in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the non-moving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

*Material Facts*

On November 3, 2010, while on duty as a Fort Wayne police officer, Officer Drummer was advised by Fort Wayne Police Detective Darrin Strayer that a white vehicle was traveling very fast and had run a red light at the corner of Wallace Street and Hanna Street.

(Aff. of Drummer, ¶¶ 3 & 4; see also Supplemental Narrative of
Strayer, DE #44-1, p. 3.)   Martin admits that he was driving an
"all-white Nissan" but denies that he was driving fast.   (Aff. of
Martin, ¶¶ 2 & 6.)   When Officer Drummer caught up with the
vehicle, it was "driving fine."   (Aff. of Drummer, ¶ 5.)   The
vehicle eventually pulled into the Shell gas station as did Officer
Drummer.   (*Id.* at ¶ 6; Aff. of Martin, ¶ 7.)[4]   Martin exited the
vehicle and walked towards the gas station convenience store.
(Aff. of Drummer, ¶¶ 7 & 8.)   As he was walking into the store,
Officer Drummer heard Martin state, "Licensed up this time mother
f**ker, licensed up this time mother f**ckers."   (*Id.* at ¶ 7.)
When Martin came out of the convenience store with his
identification in hand, Officer Drummer inquired of him whether he
needed anything.   (*Id.* at ¶ 8.)   According to officer Drummer,
Martin stated, "Since you were following me, I didn't do anything
wrong."   (*Id.*)   Martin also advised Officer Drummer that he had not
run a red light at the intersection of Wallace Street and Hanna
Street.   (*Id.*)   At that point, Officer Drummer asked Martin for his
identification.   (*Id.*)   Officer Drummer told Martin to stand in
front of his squad car while he ran his information, and Officer

---

[4] Martin claims that this was the second time he was stopped by Officer
Drummer but provides no admissible evidence as to the alleged first stop.
(Aff. of Martin, ¶ 7.)   Martin simply states that he was "subjected to
excessive force by officer Drummer and several unknown Fort Wayne police
officers," was "illegally searched by the officers, as well as the car that I
was driving also."   (*Id.* at ¶¶ 3, 4.)   The Court will address these
inadmissible statements in the analysis section in depth.

Drummer's in-car camera with body microphone was activated. (*Id.* at ¶ 9; see also DVD provided to the Court at DE #66.) Officer Drummer ran Martin's information and found that Martin had a valid driver's license and no outstanding warrants. (*Id.* at ¶ 10.) Martin claims that an unknown male officer was making racial and unprofessional comments to him at that time. (Aff. of Martin, ¶ 9.) Martin claims that he attempted to attain the unknown officer's name but was ordered to leave by Officer Drummer. (*Id.*) Officer Drummer admits that he ordered Martin to leave, but he claims that Martin's requests for identification were made to him. (Aff. of Drummer, ¶ 11.) There are no other officers seen or heard on the DVD of the in-car camera recording. (DVD at DE #66.) The in-car camera recording does not show Officer Drummer (or any other officer) having physical contact with Martin or searching his car or person. (*Id.*) Officer Drummer attests to the same. (Aff. of Drummer, ¶ 15.) Martin and Officer Drummer both left the Shell gas station in their separate vehicles. (Aff. of Drummer, ¶ 13.) The encounter lasted approximately two minutes. (DVD at DE #66.)

In his deposition, Martin stated that the Nissan he was driving at the time of the alleged incidents was owned by his girlfriend, Amanda Delagrange. (Dep. of Martin, 11:4-7, Aug. 6, 2012.) Also, when questioned during his deposition, Martin stated that desk clerk Candice LNU "didn't do anything wrong. She just — I feel she was professional." (*Id.* at 56: 12-13.)

*Initial Matters*

In his response brief, Martin rehashes various discovery disputes including the denial of several of Martin's motions to compel as well as the granting of Defendants' motion to strike Martin's untimely discovery requests. Not only did Magistrate Cosbey deal with these discovery disputes via detailed and well-reasoned opinions (see e.g. DE #88) but the undersigned has addressed and rejected Martin's arguments as well. (See DE #96.) Furthermore, a response brief to a summary judgment motion is not the proper place to reinstate discovery disputes or previously ruled upon motions. Therefore, any such requests within Martin's response brief are **DENIED**.

ANALYSIS

A plaintiff may bring a cause of action under 42 U.S.C. section 1983 against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. In order to prevail on a section 1983 claim, a plaintiff must show that he "was deprived of a right secured by the Constitution or federal law" "by a person

acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

First Amendment Claims

The First Amendment provides for religious and political freedom as well as freedom of speech. U.S. Const. Amend. I. Those who wish to petition the government for the redress of grievances are protected, and this right "extends to the courts in general and applies to litigation in particular." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008). The Seventh Circuit has held that:

> [a]s with the free speech claim, to prevail in an access to the courts or petition for redress of grievances retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action.

*Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009).

Defendants contend that Martin has provided no evidence to support any First Amendment claims and, therefore, summary judgment should be granted in their favor. (DE #107, pp. 1-2.) In his controlling pleading, as far as the Court can gather, Martin alleges that Defendants violated his First Amendment rights when a desk clerk at the Fort Wayne Police Department was "unprofessional and uncooperative in helping [Martin] file a complaint" and that he

was "denied to make a complaint" when an unknown officer threw a complaint form at him along with an envelope and told him to "do it by mail." (DE #23, p. 3.) In his response brief, Martin simply claims that Defendants violated his First Amendment rights when the City of Fort Wayne and the Fort Wayne Police Department denied him "the right of the 'people' to be free, peaceably, and the right to petition the government for a 'Redress of Grievances,' or right to be heard." (DE #104, pp. 8-9.) However, mere allegations in a complaint and unsupported assertions in a response brief need not be considered by the Court as evidence at the summary judgment stage. *Tibbs v. City of Chicago*, 469 F.3d 661, 663 n.2 (7th Cir. 2006).

In his affidavit, which is a type of document that can be properly utilized at this stage if it meets the requirements set forth in Federal Rule of Civil Procedure 56(c)(4), Martin offers no details whatsoever that would support his First Amendment claim. His vague, confusing, and conclusory statement that he "ask[ed] for a superior or supervisor to the, which I feel was intentional and deliberate conduct the officer and my request was ignored" (Aff. of Martin, ¶ 5) does nothing to create a genuine dispute that Defendants violated his First Amendment rights. Even taking Martin at his word that an unnamed officer ignored his request to speak to a supervisor, no reasonable jury could return a verdict for Martin on any First Amendment claim because he has not presented evidence

that would support judgment in his favor. See *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) ("A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial."); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quotation omitted) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."); *Martin v. Fort Wayne Police Dep't*, No. 1:11-CV-348 RM, 2013 WL 310298, at *3 (N.D. Ind. Jan. 25, 2013) (granting summary judgment and finding that "[the same plaintiff] can't rest upon the allegations in his original and amended complaints, and had to present evidence in an admissible form that, if believed, would support judgment in his favor."). Martin has failed to meet this evidentiary requirement with respect to any alleged First Amendment violations, and Defendants are entitled to summary judgment.


Fourth Amendment - Excessive Force Claims

Excessive force claims brought against law enforcement officers which stem from an arrest, investigatory stop, or other seizure of a citizen are analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386,

17

395 (1989); *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th
Cir. 2005).

> The reasonableness of a particular use of
> force must be judged from the perspective of a
> reasonable officer on the scene, rather than
> with the 20/20 vision of hindsight. The
> question is whether the officers' actions are
> objectively reasonable in light of the facts
> and circumstances confronting them, without
> regard to their underlying intent or
> motivation.

*Tibbs*, 469 F.3d at 665 (internal quotations marks, brackets, and
citations omitted). The Seventh Circuit has recognized that a
person has a right to be free from intentional infliction of pain
during law enforcement handcuffing incidents; however, "a
reasonable officer cannot be expected to accommodate an injury that
is not apparent or that otherwise has not been made known to him."
*Stainback v. Dixon*, 569 F.3d 767, 773 (7th Cir. 2009).

Defendants contend that summary judgment should be granted on
Martin's excessive force claims; they point to Officer Drummer's
affidavit and the in-car camera video recording in support of their
contention that no excessive force was used against Martin. (DE
#102, p. 8.) In his controlling pleading, Martin alleges that he
was "rudely snatched out of his car, handcuffed roughly and placed
into the back of an unknown police vehicle" where he sat for more
than twenty minutes before being released and ordered to leave the
scene. (DE #23, p. 3.) Similarly, in his response brief, Martin
states that Officer Drummer and several unknown Fort Wayne police

officers "forcefully snatched plaintiff out of the vehicle, implied (sic) excessive force to plaintiff and roughly handcuffed" him. (DE #104, p. 9.)   Yet, as noted above, mere allegations in a complaint and unsupported assertions in a response brief need not be considered by the Court.   *Tibbs*, 469 F.3d at 663 n.2.

In his affidavit, Martin simply states that he was "subjected to excessive force by officer Drummer, and several unknown Fort Wayne police officers" and was then "again stopped and harassed for no reason." (Aff. of Martin, ¶¶ 4 & 7.)  However, these statements are inadmissible because they are vague, speculative, legal conclusions.   See *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Intern., Inc.*, 533 F.3d 555, 562 (7th Cir. 2008) (a district court should give no credence to speculative, conclusory and unsupported assertions); *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985) ("Because legal argumentation is an expression of legal opinion and is not a recitation of a 'fact' to which an affiant is competent to testify, legal argument in an affidavit may be disregarded."); *Liberles v. Cook Cnty.*, 709 F.2d 1122, 1129 (7th Cir. 1983) (an affidavit containing only hearsay and legal conclusions is "not entitled to consideration because it does not contain evidence admissible at trial.").

Martin has not provided any details regarding the alleged use of excessive force, nor does he assert that he made the officers

aware of any discomfort he may have been experiencing during the alleged incidents. In essence, Martin has provided absolutely no admissible evidence to create a genuine dispute that would be relevant to proceeding with these claims. See *United States v. 5443 Suffield Terrace*, *Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010) ("At summary judgment, unfortunately for [the plaintiff], saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact, and it was not the district court's job to sift through the record and make [the plaintiff's] case for him."); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and must present sufficient evidence to create genuine issues of material fact to avoid summary judgment."). Martin has failed to meet his evidentiary requirements with respect to any alleged excessive force claims, and Defendants are entitled to summary judgment.


Fourth Amendment - Unlawful Search Claims

The Fourth Amendment to the United States Constitution provides protection against unreasonable searches and seizures. U.S. Const. amend. IV. Fourth Amendment rights, which are considered personal, cannot be vicariously asserted, and "[a]

driver who borrows a car with the owner's permission may acquire standing to challenge the search of the vehicle only if he can establish that he has a legitimate expectation of privacy in it or in the area searched." *U.S. v. Amaral-Estrada*, 509 F.3d 820, 826 (7th Cir. 2007). Courts look to two factors to determine whether a non-owner is afforded protection under the Fourth Amendment: "whether the driver manifested a subjective expectation of privacy in the area searched; and whether that expectation of privacy is one that society would find objectively reasonable." *Johnson v. U.S.*, 604 F.3d 1016, 1020 (7th Cir. 2010) (citing *Amaral-Estrada*, 509 F.3d at 826-27). This inquiry is highly fact-specific. *U.S. v. Carlisle*, 614 F.3d 750, 757 (7th Cir. 2010).[5] The burden is on the person asserting that his constitutional rights were violated to show that he has a protected privacy interest in the vehicle. *U.S. v. Figueroa-Espana*, 511 F.3d 696, 704 (7th Cir. 2007); see also *Massey,* 457 F.3d at 716 (if the non-moving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper).

In addition, individual liability under 42 U.S.C. section 1983 must be based upon a finding that the defendant caused the alleged

---

[5] The Seventh Circuit has described five key factors for the court to consider: (1) whether the defendant had a possessory [or ownership] interest in the thing seized or the place searched; (2) the right to exclude others from that place; (3) exhibited a subjective expectation that it would remain free from governmental invasion; (4) took normal precautions to maintain his privacy; and (5) was legitimately on the premises. *Carlisle*, 614 F.3d at 759.

constitutional deprivation. *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). In other words, a defendant must be "personally responsible" for the constitutional deprivation for an individual liability claim to succeed. *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 869 (7th Cir. 2011).

Defendants first contend that because Martin admitted in his deposition that he did not own the vehicle he alleges was searched, Martin has not established the requisite protected privacy interest needed to support his claims. (DE #102, p. 8.) In his response brief, Martin states that he was "licenced by the Indiana BMV to drive," was given "permission by Amanda [Delegrange] to drive the car," and was "on Amanda['s] insurance policy and insured to drive the vehicle." (DE #9, p. 18.) Yet, as stated above, unsupported assertions in a response brief need not be considered by the Court. *Tibbs*, 469 F.3d at 663 n.2.

In his affidavit, Martin admits that he was driving the all-white Nissan in question and states that Amanda Delegrange, his girlfriend, gave him permission to drive the car. (Aff. of Martin, ¶ 2.) However, the out-of-court assertion attributed to Amanda Delegrange[6] is inadmissible hearsay because it is being offered by Martin to establish the truth of the matter asserted.[7] See Federal Rule of Evidence 802; *Gunville v. Walker*, 583 F.3d 979, 985 (7th

---

[6] The assertion is that she gave Martin permission to drive the car.

[7] See Federal Rule of Civil Procedure 56(c)(4).

Cir. 2009) ("A party may not rely on inadmissible hearsay to oppose a motion for summary judgment."); *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 925 (7th Cir. 2001) (inadmissible hearsay does not stave off summary judgment); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent it is inadmissible in a trial"). As such, the Court is left with the fact that Martin was driving a white Nissan at the time of the alleged incident that did not belong to him. Martin has presented no admissible evidence to show that he held a legitimate expectation of privacy in that vehicle. See *Figueroa-Espana*, 511 F.3d at 704 ("To satisfy the subjective portion of the test, a defendant must show that he 'actually and subjectively' held an expectation of privacy.") Therefore, Defendants are entitled to summary judgment on Martin's claims that his Fourth Amendment rights were violated when the car he was driving was allegedly searched.

Defendants next argue that, even if he could establish the requisite privacy interest, Martin has not presented any evidence that would create a genuine dispute of material fact as to any alleged search because Martin's evidence is conclusory and does not establish that any named defendant was personally responsible for any search. (DE #107, pp. 3-4.) Defendants point to Officer Drummer's affidavit and the in-car camera video recording in support of their contention that Officer Drummer, the only named

23

officer, did not search Martin or the car he was driving. (DE #102, p. 8.) In his controlling pleading, Martin alleges that Officer Drummer made him pull the vehicle he was driving over to the side of the road and that he and several unknown police officers searched the vehicle. (DE #23, p. 3.) Martin claims that the vehicle was later searched again at the gas station "inside the trunk and under the hood of the vehicle as if the officers were searching for secret compartments or stash spots." (*Id.*)[8] In his response brief, Martin states that, during two encounters with Officer Drummer, "the defendants did 'illegally' search him, which the defendants did not have a valid probable cause." (DE #104, p. 10.) Again, however, allegations in a complaint and unsupported assertions in a response brief need not be considered by the Court. *Tibbs*, 469 F.3d at 663 n.2.

In his affidavit, Martin simply states that he was "illegally searched by the officers, as well as the car that I was driving

---

[8] The Court notes that, in the "factual contention/claims of relief" section of his controlling pleading, Martin specifically alleges that his rights were violated when Defendants searched "the *vehicle* plaintiff/petitioner was driving." (DE #23, p. 1) (emphasis added). In the "short hand plain statement" section of that same document, Martin alleges that he was detained while his "*vehicle* was being searched" and that the alleged search at the gas station "resulted in the officers searching inside the trunk and under the hood of the vehicle . . . ." (*Id.* at 3) (emphasis added.) Martin does not claim that his person was searched in his controlling pleading. As such, summary judgment is proper on any claims that Martin's person, as opposed to his vehicle, was searched. See *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)).

also." (Aff. of Martin, ¶ 4.) However, Martin's assertion that the search was conducted "illegally" is an impermissible legal conclusion. See *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima,* 533 F.3d at 562; *Pfeil*, 757 F.2d at 862; *Liberles v. Cook Cnty.*, 709 F.2d at 1129. What the Court is left with is Martin's vague statement that he and the vehicle he was driving were searched by unspecified officers. Martin provides no details whatsoever as to the alleged searches themselves. More importantly, he does not state via his affidavit or provide otherwise admissible evidence that Officer Drummer (as opposed to one or more of the other unnamed officers) was personally responsible for the alleged searches, and, as will be discussed by the Court in detail below, claims against unknown officers are meaningless at this point. As such, Martin has failed to meet his evidentiary requirements with respect to any alleged unlawful search claims, and Defendants are entitled to summary judgment.


Fourth Amendment - Unlawful Seizure Claims

Only unreasonable searches are prohibited under the Constitution. See *Terry v. Ohio*, 392 U.S. 1 (1968). "A seizure within the meaning of the Fourth Amendment occurs when a person's freedom of movement is restrained either by means of physical force or show of authority." *Carter v. City of Milwaukee*, --- F.3d ----,

2014 WL 636821, *3 (7th Cir. Feb. 19, 2014) (internal quotation marks and citation omitted). The Fourth Amendment's unreasonable seizure provision is not violated if a law enforcement officer approaches an individual in public to pose questions or ask for identification as long as "a reasonable person would feel free to terminate the encounter." *U.S. v. Drayton*, 536 U.S. 194, 200-01 (2002); see also *U.S. v. Douglass*, 467 F.3d 621, 623 (7th Cir. 2006) ("The Fourth Amendment is not triggered when law enforcement officers merely approach an individual in a public place and ask a few questions."). Even if a traffic stop or investigative detention does occur, it is not automatically unconstitutional according to the principles articulated in *Terry v. Ohio*, 392 U.S. 1, 21 (1968). See *U.S. v. Finke*, 85 F.3d 1275, 1278 (7th Cir. 1996) (citations omitted). In *Terry*, the United States Supreme Court determined a brief stop and superficial search does not require probable cause, but merely a reasonable, articulable suspicion of wrongdoing. *Terry*, 392 at 21. A brief investigatory stop may be conducted when a police officer has a "reasonable suspicion supported by articulable facts that criminal activity is afoot." *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002).

Defendants first assert that Martin's unlawful seizure claims fail because he has not provided sufficient evidence that he was unlawfully seized. (DE #107, p. 4.) Defendants again point to

Officer Drummer's affidavit and the in-car camera video recording to support their position. In his controlling pleading, Martin alleges that he was pulled over, was "detained for more than twenty minutes unwillingly beyond plaintiffs will while his vehicle was being searched," was released, and then drove to a gas station where his car was searched again for "roughly twenty to twenty five minutes." (DE #23, p. 3.) In his response brief, Martin states that Defendants did not have probable cause to "stop plaintiff and by doing it was infact 'illegal.'" Yet, as noted repeatedly throughout this order, allegations in a complaint and unsupported assertions in a response brief need not be considered by the Court. *Tibbs*, 469 F.3d at 663 n.2.

In his affidavit, Martin simply states that he was "illegally searched by the officers, as well as the car I was driving also" and then several paragraphs later states that, despite the fact that he did not commit a crime and was not speeding, he was "followed by officer Drummer to shells gas station on Pontiac street, where I was again stopped and harassed for no reason." (Aff. of Martin, ¶¶ 4 & 7.) As discussed above, Martin's assertion that the search conducted by "the officers" was illegal is vague, conclusory, and shall be disregarded as such by the Court. See *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima,* 533 F.3d at 562; *Pfeil*, 757 F.2d at 862; *Liberles v. Cook Cnty.*, 709 F.2d at 1129. Martin

provides absolutely no additional details as to the alleged initial seizure, nor does he specifically state that Officer Drummer, the only named officer, was personally responsible for that alleged deprivation. Without more, Martin has not presented admissible evidence that, if believed, would create a genuine dispute and support judgment in his favor. Defendants are entitled to summary judgment on Martin's unlawful seizure claim as to the alleged initial seizure. See *Sow*, 636 F.3d at 300; *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 722-23 (7th Cir. 2008) (collecting cases) ("district court correctly declined to consider [plaintiff's] conclusory, nonspecific allegations" because plaintiff "must present specific facts showing a genuine issue to survive summary judgment"); *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("But we have consistently held that summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.'") (citing *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)); see also *Backes v. Vill. of Peoria Heights, Ill.,* 662 F.3d 866, 869 (7th Cir. 2011) ("a defendant must be 'personally responsible' for the constitutional deprivation for an individual liability claim to succeed.")

As to the encounter at the gas station, Defendants argue that

there was no traffic stop or investigatory seizure at all that would trigger Fourth Amendment concerns. (DE #102, p. 9.) They again reference Officer Drummer's affidavit and the in-car camera recording. It is undisputed that Martin pulled into the gas station parking lot, walked towards the convenience store entrance, stated "licensed up this time mother f**cker, licensed up this time mother f**kers" which was overheard by Officer Drummer, and that Martin then entered the convenience store. It is also undisputed that when Martin came out of the convenience store with his license in hand, he stated to Officer Drummer "since you were following me, I didn't do anything wrong." Finally, it is undisputed that Officer Drummer asked Martin for his identification, ran the identification, found there were no existing warrants, and ordered Martin to leave. According to the in-car camera video recording, it was approximately two minutes from the time Officer Drummer asked Martin for his identification to the time Martin was ordered to leave and Officer Drummer pulled away in his squad car.[9] Defendants are correct that such a brief encounter, where the only forceful command was in fact Officer Drummer ordering Martin to leave the scene rather than to stay, constitutes a non-coercive

---

[9] In his affidavit, Martin simply states that he was "followed by Officer Drummer to shells gas station on Pontiac street, where I was again stopped and harassed for no reason." (Aff. of Martin, ¶ 7.) He then states that an "unknown male officer was making racial and unprofessional comments to me, which I tried to attain the unknown officer name and I was ordered to leave by officer Drummer." (*Id.* at ¶ 9.) These vague and conclusory allegations to nothing to create a genuine dispute of the aforementioned facts.

police-citizen encounter rather than a seizure.  See e.g. *Drayton*, 536 U.S. at 204 (encounter was deemed constitutional where "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice.")

Defendants next argue that even if Officer Drummer did conduct an investigatory stop, it was proper.  (DE #102, pp. 9-11.)  They point out that Officer Drummer was advised by Detective Strayer that a white vehicle matching the description of Martin's car was traveling very fast and had just run a red light.[10]  More importantly, they point out that, once Martin pulled into the gas station in the white vehicle and began to walk towards the convenience store, his behavior (described in detail above) was antagonistic towards Officer Drummer which created a reasonable suspicion of wrongdoing.  The Court agrees with Defendants that, such undisputed antagonistic behavior created a reasonable, articulable suspicion of wrongdoing, and the brief encounter that followed did not run afoul of the Fourth Amendment's prohibition of

---

[10] While Martin states in his affidavit that "[a]t no time did I commit a crime on 11/3/2010, nor was I speeding or driving fast on that day," Defendants point out that whether Martin committed a crime, was speeding, or was driving fast is based on the officer's perspective, not the driver's perspective.  The Court agrees with Defendants.  See *United States v. Parra*, 402 F.3d 752 (7th Cir. 2005) ("Courts evaluate probable cause not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer - seeing what he saw, hearing what he heard.")

unreasonable seizures. See *Jackson*, 300 F.3d at 745. Martin's proffered evidence does nothing to create a genuine dispute to the contrary, and Defendants are entitled to summary judgment on the unreasonable seizure claims.

Fourteenth Amendment - Equal Protection and Due Process Claims

The Fourteenth Amendment mandates that the states not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. A plaintiff may bring a claim under the Due Process Clause and/or the Equal Protection Clause. The Due Process Clause is not implicated, however, when a claim is "covered by" another constitutional provision; the claim must be analyzed under that specific Constitutional provision and not under the more general due process rubric. *Tesch v. Cnty. of Green Lake*, 157 F.3d 465, 471 (7th Cir. 1998). When the Due Process Clause is triggered, it protects individuals against "arbitrary action of government" and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Bublitz v. Cottey*, 327 F.3d 485, 489-90 (7th Cir. 2003) (internal quotation marks and citations omitted). In other words, the conduct must be such that it "shocks the conscience" in order to be actionable. *Id*. at 490. Actions that are intended to injure and are not justified by a governmental

interest are likely to be conscience shocking. *Steen v. Myers*, 486 F.3d 1017, 1023 (7th Cir. 2007). The Seventh Circuit has found that even a minor traffic stop qualifies as a legitimate government interest. *Id*. The Seventh Circuit has also noted that "a failure to comply with departmental policy does not implicate the Constitutional protections of the Fourteenth Amendment." *Id*.

In terms of the Equal Protection Clause, a plaintiff may bring a claim for discrimination based on race, national origin, sex, or other class-based classifications. *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Additionally, "class-of-one claims can be brought based on allegations of the irrational or malicious application of law enforcement powers." *Id*. Such claims require proof that the plaintiff was intentionally treated differently from others for no rational reason. *Williamson v. Curran*, 714 F.3d 432, 449 (7th Cir. 2013).

Defendants argue that Martin's Due Process and Equal Protection claims are barred as a matter of law. They correctly point out that Martin sought to amend his complaint to add equal protection and due process claims in September of 2012 but that his request was denied by the Court because it was untimely. (DE #107, p. 6, n. 3.) Martin does not deny that his controlling pleading fails to address these claims, yet in his response brief he states that "defendants 'deprived' plaintiff his Equal Protection safeguards and Due Process Clause. Plaintiff was "'stopped' over

30 times with in a 60 day period, in the same fashion, by the same officers or within the 'group' of the same officers committing the 'wrong acts.'" (DE #104, p. 11; see also DE #23.) Again, allegations in a complaint and unsupported assertions in a response brief need not be considered by the Court. *Tibbs*, 469 F.3d at 663 n.2. Martin's affidavit does not address these claims in any way.

It is clear that Martin cannot use his response brief to amend his complaint (see *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002)), and, even if he could, Defendants are still entitled to summary judgment on these claims. Assuming, *arguendo*, that the Court were to analyze Martin's Due Process claims under the Fourteenth Amendment rubric, which it should not, nothing in Martin's controlling pleading, response brief, or affidavit suggests any actions by any defendant that rise to the level of conscience shocking. See e.g. *Steen*, 486 F.3d at 1023. As for Martin's Equal Protection allegations, he has not presented a single piece of admissible evidence in support of these bald allegations. See *Sow*, 636 F.3d at 300 ("In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and must present sufficient evidence to create genuine issues of material fact to avoid summary judgment."). As with his other claims, Martin has failed to meet his evidentiary requirements with respect to any alleged Due Process or Equal Protection claims, and Defendants are entitled to

summary judgment.

Failure to Intervene Claims

A state actor's failure to intervene can subject him to liability under certain circumstances pursuant to section 1983. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). For example, an officer has a duty to "to intervene to prevent a false arrest or the use of excessive force if the officer is informed of the facts that establish a constitutional violation and has the ability to prevent it." *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008) (citing *Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003)). However, to establish liability, a plaintiff must produce evidence that a named defendant alleged to have failed to intervene had both "reason to know" that a constitutional harm was being committed and had a "realistic opportunity to intervene to prevent the harm from occurring." *Id*. (citing *Yang*, 37 F.3d at 285).

Defendants assert that Martin has provided no evidence to support his allegation that any of the Defendants failed to intervene because he has not presented admissible evidence that any constitutional violation occurred. (DE #107, pp. 5-6.) Martin's controlling pleading alleges failure to intervene claims in only very broad and vague terms by noting that "unprofessional, non-policy, wrongdoing acts are being conducted and a right minded

34

officer is fully aware that a wrongdoing is occurring but failed to intervene or stop it." (DE #23, p. 2.) Similarly, in his response brief, Martin simply states that "defendants did fail to intervene, or 'prevent' the harm from occurring to plaintiff, when the officers knew that the force was being used, that plaintiff was unjustifiably arrested, and or detained beyond his will, and that the constitutional violation has been committed by a law enforcement official, and the officer had a realistic opportunity to intervene to prevent the harm from occurring to plaintiff." (DE #104, p. 10.) Yet allegations in a complaint and unsupported assertions in a response brief need not be considered by the Court. *Tibbs*, 469 F.3d at 663 n.2. He does not further expand upon his failure to intervene claims in his affidavit.

For the reasons described in detail in the preceding sections, Martin has not provided admissible evidence showing that he was deprived of any right secured by the Constitution or federal law by any of the Defendants.[11] Because Martin has not presented

---

[11] As discussed, the statements in Martin's affidavit suffer from a variety of deficiencies. For example, Martin's statements that he was "subjected to illegal force" and was "illegally searched" are impermissible legal conclusions that may not be used to defeat a motion for summary judgment. See *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima,* 533 F.3d at 562; *Pfeil*, 757 F.2d at 862; *Liberles v. Cook Cnty.*, 709 F.2d at 1129. Martin's statement that his request for a supervisor was ignored was because of "intentional and deliberate conduct of the officer" is not only vague and confusing but it is speculative as well. See *American Grain Trimmers, Inc. v. Office of Workers' Compensation Programs*, 181 F.3d 810, 818 (7th Cir. 1999) ("Indeed, we routinely reject vague and speculative affidavits when they are submitted by a party seeking to defeat a motion for summary judgment that has been filed against it."); *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998) ("conjecture or speculation . . . cannot be used to defeat a

admissible evidence that would create a genuine dispute that constitutional violation occurred, he has not shown that Defendants had any duty to intervene. Furthermore, even assuming, *arguendo*, that a constitutional violation occurred, Martin has presented no admissible evidence that Officer Drummer or any other named Defendant had reason to know of the alleged violations by the unnamed officers and had a realistic opportunity to intervene. Although he alleges that his request was ignored when he asked to speak to a supervisor, he does not identify to whom he made this request, nor does he state that Officer Drummer observed and knew that any constitutional violations were being committed by any of the other officers. See *Bond v. Simpson*, 1:10-cv-856-WTL-TAB, 2012 WL 266946, at *6 (S.D. Ind. Jan. 30, 2012). Therefore, Defendants are entitled to summary judgment on Martin's failure to intervene claims.[12]

_____

summary judgment motion").

[12] To the extent that Martin is arguing that his failure to intervene claim is premised on the incident at the gas station when an "unknown male officer was making racial and unprofessional comments to [him]" and he was "ordered to leave by Officer Drummer" (DE #104, ¶¶ 7, 9), summary judgment must also be granted on this claim. Not only does this claim suffer from the same deficiencies discussed in this section (i.e. Martin has not presented admissible evidence that a constitutional violation occurred thus no Defendant had a duty to intervene), but, as Defendants point out, it is also belied by the record. Officer Drummer's in-car camera recording shows that no other officers were present at the gas station during the encounter on November 3, 2010. (DVD at DE #66.) See also *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (a court may credit a defendant's version of events at the summary judgment stage when it is substantiated by a video recording which contradicts a plaintiff's unsupported allegations).

## Claims Against The Fort Wayne Police Department

In Indiana, municipal police departments lack the capacity to be sued under 42 U.S.C. section 1983 because:

> [t]he United States Supreme Court has instructed that local government liability under § 1983 'is dependent on an analysis of state law.' *McMillian v. Monroe County*, 520 U.S. 781, 786, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). Under Indiana law, a '[m]unicipal corporation' is a 'unit, . . . or other separate local governmental entity that may sue and be sued.' Ind.Code § 36-1-2-10. A ''[u]nit' means county, municipality, or township,' Ind.Code § 36-1-2-23, and a '[m]unicipality' is a 'city or town,' Ind.Code § 36-1-2-11. Thus, the Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued. See *Martin v. Fort Wayne Police Dep't*, 2010 WL 4876728, at *3 (N.D.Ind. 2010).

*Sow*, 636 F.3d at 300 (7th Cir. 2011). Martin has sued the Fort Wayne Police Department for violations of his First, Fourth, and Fourteenth Amendment rights. However, Defendants correctly argue that it is impermissible to sue the Fort Wayne Police Department in this manner, and, therefore, the Fort Wayne Police Department is entitled to summary judgment on all claims.


## Claims Against The City of Fort Wayne

Under *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978), a city may be held liable for the unconstitutional acts of its employees taken pursuant to an official custom, policy, or practice. *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir.

2010). This may be demonstrated through: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). The theory of respondeat superior liability is not available under section 1983. *Palka v. City of Chicago*, 662 F.3d 428, 434 (7th Cir. 2011). See also *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) ("Misbehaving employees are responsible for their own conduct, 'units of local government are responsible only for their policies rather than misconduct by their workers.'" (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007))). A "direct causal connection between the policy or practice and his injury" must also be established by the plaintiff in order to hold a municipality liable. *Rice ex rel. Rice v. Corr. Med. Serv.*, 675 F.3d 650, 675 (7th Cir. 2012).

Martin has sued the City of Fort Wayne for violations of his First, Fourth, and Fourteenth Amendment rights. Defendants argue that Martin has failed to provide any evidence that the City of Fort Wayne violated his rights pursuant to an unconstitutional custom, policy, or practice as required by *Monell*. (DE #107, pp. 9-11.) In his response brief, Martin alleges that "the City of

Fort Wayne is 'liable' for the Fort Wayne Police Dept. policy #PD97-2401 and PD97-2407 'Use of Force policy and a Stop and Frisk policy I.C. 35-33-1-1' that is unconstitutional and are the 'reasons' or justification of the acts of its employees taken pursuant to the 'official policy' or custom."[13] (DE #104, p. 12.) He goes on to state that "these same 'wrong action' or unconstitutional acts have happen[ed] more than once" and that he was stopped over thirty times within a sixty day period. (*Id.*)

What Martin does not do is provide any admissible evidence to support these claims. He does not mention such policies, practices, or customs in his affidavit, attach any relevant exhibits, attempt to specifically set forth why these policies or their application are allegedly unconstitutional, point to any person with final policymaking authority that caused a constitutional injury, or further explain or support his position with admissible evidence in any way. He has failed to offer any facts that demonstrate that the City of Fort Wayne has policies of allowing illegal stops and searches or that sanction the use of excessive force. Simply put, Martin has failed to offer any facts that demonstrate a genuine dispute exists as to whether the City of Fort Wayne has an unconstitutional policy or custom that resulted

---

[13] In their reply brief, Defendants point out that the Fort Wayne Police Department does not have a policy number PD97-2407 and that Indiana Code 35-33-1-1 is an Indiana statute, not a Fort Wayne Police Department policy. (DE #107, p 9, n. 4.)

in and caused Martin to suffer a constitutional deprivation.  See *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006) ("[b]oth in the 'widespread practice' implicit policy cases and in the cases attacking gaps in express policies, what is needed is *evidence* that there is a true municipal policy at issue, not a random event.") (emphasis added); see also *Sow*, 636 F.3d at 300; *5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d at 510; *Hemsworth, 476 F.3d at 490*; *Tibbs*, 469 F.3d at 663 n.2; *Johnson*, 325 F.3d at 901.  Martin has failed to meet the evidentiary requirements with respect to any of these alleged violations under section 1983, and the City of Fort Wayne is entitled to summary judgment on all claims.


Claims Against Fort Wayne Police Chief Rusty York and the City of Fort Wayne Mayor Tom Henry

As noted above, a defendant must be "personally responsible" for the constitutional deprivation for an individual liability claim to succeed.  *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 869 (7th Cir. 2011).  However, this does not necessarily mean that a defendant must participate "directly" in the underlying events causing the deprivation; a supervisor may be held personally liable where he "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye for fear of what they might see.  They must in other words act either knowingly or with deliberate, reckless indifference." *Id*. at 869-70 (quoting

*Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

Defendants argue that Martin has provided no evidence to support any section 1983 claims against Chief York or Mayor Henry. (DE #107, pp. 9-11.) In his response brief, Martin asserts that Chief York and Mayor Henry "failed to take corrective action with respect to police personnel whose vicious propensities were notorious, and failed to train, or provide and or 'assure' proper training and supervision of the personnel or to implement meaningful procedures to discourage 'lawless' official conduct." (DE #104, p. 13.) Additionally, Martin claims that Chief York and Mayor Henry are "aware of the 'challenged' policy or custom, due to the numerous complaints filed with the Internal Affairs and Metro Human Relations (Risk Management), but have not taken the proper care nor concern." *Id.* However, as stated many times throughout this order, mere allegations in a complaint and unsupported assertions in a response brief need not be considered by the Court as evidence at the summary judgment stage. See e.g. *Tibbs,* 469 F.3d at 663 n.2.

In his affidavit, Martin's vague, confusing, and conclusory statement that he "ask[ed] for a superior or supervisor to the, which I feel was intentional and deliberate conduct the officer and my request was ignored" at some unspecified point on November 3, 2010 (Aff. of Martin, ¶ 5), does nothing to create a genuine dispute that Chief York and Mayor Henry were personally responsible

for any of the alleged constitutional deprivations. Even taking Martin at his word that an unnamed officer ignored his request to speak to a supervisor on the day of the alleged incident, Martin has presented no admissible evidence that Chief York or Mayor Henry participated directly in, knew about, approved, condoned, or turned a blind eye to any unlawful conduct. Martin's bare assertions to the contrary do nothing to save these claims. See *Martin,* 2013 WL 310298 at *3 (granting summary judgment "where [same plaintiff] hasn't presented any evidence identifying any action, policy, or custom that would support a claim against the City of Fort Wayne, the Police Department, Mayor Henry or Police Chief York" finding he "can't rest upon the allegations in his original and amended complaints, and had to present evidence in an admissible form that, if believed, would support judgment in his favor."); see also *Hemsworth*, 476 F.3d at 490. Martin has failed to meet the necessary evidentiary requirements with respect to any section 1983 claims against Mayor Henry and Chief York, and, as such, they are both entitled to summary judgment on all claims.[14]

---

[14] To the extent that Martin is suing Chief York and Mayor Henry in their official capacities, his claims still fail. As discussed in detail in the preceding section, Martin has not put forth any evidence that either of them implemented an official policy or acquiesced in a department or city custom that caused any of the alleged constitutional deprivations. *Monell*, 436 U.S. at 692-94. Furthermore, "[b]ecause a suit against a government office and the officeholder are identical, the two defendants . . . are redundant on this claim." *Budd v. Motley*, 711 F.3d 840, 843-44 (7th Cir. 2013).

Claims Against Unknown Officers and Desk Clerk Candice LNU

In terms of unnamed and/or unknown defendants, the Seventh Circuit has held that "it is pointless to include lists of anonymous defendants in federal court [because] this type of placeholder does not open the door to relation back under Fed.R.Civ.P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (internal citations omitted). Furthermore, once the statute of limitations has passed, a plaintiff may not "name as defendants individuals that were unidentified at the time of the original pleading. Not knowing a defendant's name is not a mistake under Rule 15." *Jackson v. Kotter*, 541 F.3d 688, 696 (7th Cir. 2008); see also *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000) ("We have consistently held that Rule 15(c)(3) does not provide for relation back under circumstances, such as here, in which the plaintiff fails to identity the proper party.") For section 1983 claims brought in Indiana, federal courts utilize the two-year state statute of limitations period applicable to personal injury actions. *King*, 201 F.3d at 913; see also Ind. Code § 34-11-2-4 (2013).

Defendants argue that Martin's claims against the unknown officers cannot proceed because the two-year statute of limitations period ran on November 3, 2012, and the claims against these unknown persons are therefore "meaningless and uncompensable." (DE

#102, p. 21; DE #107, p. 11.)  In his response brief, Martin simply states that the officers should not be dismissed because "without the proper 'names' of the unknown officers, plaintiff feels that he have demonstrated who was personally involved." (DE #104, p. 14.) Martin goes on to (yet again) challenge Magistrate Cosbey's past discovery rulings and the denial of Martin's motion to amend his amended complaint.[15]

Even putting aside the facts that: (1) Magistrate Cosbey previously dealt with these motions via detailed and well-reasoned opinions; (2) the Court has concurred with Magistrate Cosbey's rulings on the record; and (3) a response brief to a summary judgment motion is not the proper place to reinstate discovery disputes or argue over previously ruled upon motions . . . Martin's claims against the unknown officers still fail.  All claims described in Martin's controlling pleading arise from alleged incidents that occurred on or before November 3, 2010. (DE #23.) As Defendants correctly point out, the two-year statute of limitations period ran on November 3, 2012.  Martin did not identify and add the unnamed officers by that date, and he cannot do so at this point.  See *Jackson*, 541 F.3d at 696; see also

---

[15] The motion to amend was filed on December 12, 2012, and sought to "supplement the unknown officers or John Does" by naming Sergeant James Ritchie, Officer Derrick Demorest, and the "911 Dispatcher on February 16, 2011" as defendants.  (DE #87.)  As noted above, this motion was appropriately denied by Magistrate Cosbey because it was filed more than seven months after the deadline to amend and because Martin failed to establish good cause for the untimely request.  (DE #94.)  The Court notes that Martin's motion to amend was also filed more than a month after the statute of limitations ran.

*Martin*, 2013 WL 310298, at *3 (quoting *Copeland v. Northwestern Mem'l Hosp.*, 964 F. Supp. 1225, 1234 (N.D. Ill. 1997) ("Claims against unknown persons are 'meaningless and uncompensable.'"). As such, Defendants are entitled to summary judgment on all claims against the unknown officers.

Defendants also argue that Martin cannot proceed with his claims against desk clerk Candice LNU because, in addition to the reasoning above, Martin's deposition testimony clearly shows that he has no valid claims against her. Although Martin states in his controlling pleading that he "talked to a desk clerk named Candice who was very unprofessional and uncooperative in helping plaintiff file a complaint" (DE #23, p. 3), his deposition testimony states the opposite. In fact, when questioned, Martin stated that desk clerk Candice LNU "didn't do anything wrong. She just — I feel she was professional." (Dep. of Martin, 56: 12-13, Aug. 6, 2012.)

Therefore, as Martin's own testimony makes it clear that there is no genuine dispute as to any alleged claims against desk clerk Candice LNU, Defendants are entitled to summary judgment.


State Law Claims

The Indiana Tort Claims Act ("ITCA") provides that a claim against a political subdivision is barred unless the prescribed notice is filed within 180 days after the loss occurs. Ind. Code 34-13-3-8; *see also Davidson v. Perron*, 716 N.E.2d 29, 33 (Ind. Ct.

App. 1999). Specifically, notice must be filed with the governing body of that political subdivision and with the Indiana Political Subdivision Risk Management Commission. Ind. Code 34-13-3-8. "The notice requirements of the ITCA apply not only to suits against political subdivisions but also to suits against employees of political subdivisions." *Davidson*, 716 N.E.2d at 33-34 (citing *VanValkenburg v. Warner*, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992). The plaintiff bears the burden of establishing substantial compliance with the notice provisions, and this is a question of law. *Chang v. Purdue Univ.*, 985 N.E.2d 35, 52 (Ind. Ct. App. 2013). "Substantial compliance with the statutory notice requirements is sufficient when the purpose of the notice requirement is satisfied." *Schoettmer v. Wright*, 992 N.E.2d 702, 707 (Ind. 2013) (quoting *Ind. State Highway Comm'n v. Morris*, 528 N.E.2d 468, 471 (Ind. 1988)). "The purposes of the notice statute include informing the officials of the political subdivision with reasonable certainty of the accident and surrounding circumstances so that the political subdivision may investigate, determine its possible liability, and prepare a defense to the claim." *Id.* (brackets omitted). "The crucial consideration is whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for the city to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense." *Id.* (quoting *Collier v. Prater*,

544 N.E.2d 497, 500 (Ind. 1989)).

In his controlling pleading, Plaintiff sets forth several state law claims, alleging Defendants harassed him and were vindictive, retaliated against him, and are responsible for defamation, mental stress and mental anguish. (DE #23, p. 2.) Defendants contend that, in addition to providing no admissible evidence to support his "state law" claims, any such claims are barred for failure to comply with the notice provisions of the ITCA. In response, Martin filed what he entitled a "Notice to Inform the Court Proof of Compliance 'ITCA' Requirements (Plaintiff's State Claims Notice")" on June 13, 2013. (DE #105.) To "show proof" to the Court that he was in compliance of the ITCA, Martin attached a letter sent from the Indiana Political Subdivision Risk Management Commission to Martin, dated September 21, 2011, that states in pertinent part:

> This letter shall serve as formal notice and acknowledgment of our receipt of the Notice of Tort Claim you recently filed against the Fort Wayne Police Department (11/3/10 incident). . . . The Fort Wayne Police Department (11/3/10 incident) is not a member(s) of the Indiana Political Subdivision Risk Management Fund. . . . The Commission can only suggest that you file your claim directly with the Fort Wayne Police Department (11/3/10 incident).

(*Id*. at 2.)

Because Defendants have raised the defense of failure to comply with the notice requirements, the burden is on Martin to prove compliance with the ITCA notice provisions. *Hedges v.*

47

*Rawley*, 419 N.E.2d 224, 227 (Ind. Ct. App. 1981). Here, the letter submitted by Martin is from the Indiana Political Subdivision Risk Management Commission, and it is dated September 21, 2011. The date of the letter is much more than 180 days after the alleged incident on November 3, 2010, and Martin has not otherwise shown that he filed notice of his tort claim within the required 180 days. See *Dameron v. City of Scottsburg*, 36 F. Supp. 2d 821, 836-39 (S.D. Ind. 1998) (granting summary judgment in part where plaintiff's state claim was barred for failure to file proper notice under ITCA). As such, Martin has failed to carry his burden of showing substantial compliance with the ITCA mandatory notice provision, and Defendants are entitled to summary judgment on all alleged state law claims.


CONCLUSION

For the aforementioned reasons, the Motion for Summary Judgment (DE #101) is **GRANTED**, Plaintiff's Motion to Strike Defendants' Summary Judgment and Affidavits (DE #106) is **DENIED**, and Defendants' Motion to Strike Portions of Martin's Affidavit (DE #108) is also **DENIED**. The Clerk is **DIRECTED** to close this case.


DATED: March 28, 2014                    /s/ RUDY LOZANO, Judge
                                         United States District Court